
# APRIL TERM, 1902.

[No. 4392.]

ADAMS ET AL., AS FIRE AND POLICE BOARD OF THE
CITY OF DENVER, AND ARMSTRONG, CHIEF OF
POLICE, v. CRONIN.

1. CITIES AND TOWNS—ORDINANCES—INJUNCTION.

Only in extreme and exceptional cases should courts of equity in-
terfere by injunction with municipal authorities in the enforcement of
penal ordinances of the municipality.

2. INTOXICATING LIQUORS—SALOONS—WINE ROOMS—STATUTES.

If section 423 Mills Ann. Stat., which preserves to all citizens of the
state equal enjoyment of places of public resort or amusement, gave to
women the right equally with men to frequent saloons, and if such right
depended solely upon statute, it was taken away by the general assem-
bly, when at a later date it adopted a charter for the city of Denver,
whereby authority was conferred upon the city to deprive women of
such right.

3. CITIES AND TOWNS—ORDINANCES—VALIDITY.

If a city ordinance passed under cover of the incidental powers of
the city appears to the court to be unreasonable, unfair, partial,
arbitrary or oppressive, it may be nullified. But if such ordinance is
expressly authorized by the general assembly in the form in which it is
expressed and is not in violation of the constitution it cannot be nulli-
fied for any of those reasons.

4. CITIES AND TOWNS—INTOXICATING LIQUORS—WINE ROOMS—CON-
STITUTIONAL LAW.

That section of the charter of the city of Denver and sections of the
city ordinances passed thereunder which prohibit the keeper of any
liquor saloon, dram shop or tippling house from keeping in connection,

therewith any wine room or other place into which any female person may enter to be there supplied with any kind of liquor, and prohibit such keeper from permitting any female person from frequenting such wine room there to be supplied with liquor are not in violation of any provision of either the United States or state constitution.

*Appeal from the District Court of Arapahoe County.*

Mr. H. M. ORAHOOD, Mr. H. L. RITTER and Mr. N. B. BACHTELL for appellants.

Mr. MILTON SMITH for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The district court issued a permanent writ of injunction restraining the defendants below, appellants here, from enforcing the provisions of sections 745 and 746 of Article 15 of the general ordinances of the city of Denver, upon the ground that they are unconstitutional and that plaintiff had no adequate remedy at law. They read:

"Sec. 745: Each and every liquor saloon, dram shop, or tippling house keeper,     *     *     *     * who shall have or keep, in connection with or as part of such liquor saloon, dram shop or tippling house, any wine room or other place, either with or without door or doors, curtain or curtains, or screen of any kind, into which any female person shall be permitted to enter from the outside, or from such liquor saloon, dram shop or tippling house, and there be supplied with any kind of liquor whatsoever, shall, upon conviction, be fined as hereinafter provided."

"Sec. 746: No person   *   *   *   * having charge or control of any liquor saloon, or place where in-

toxicating or malt liquors are sold or given away, or
any place adjacent thereto, or connected therewith
in any manner whatsoever, either by doors or other-
wise, shall suffer or permit any female person to be
or remain in such liquor saloon, dram shop tippling
house, or other place where intoxicating or malt
iquors are sold or given away, for the purpose of
there being supplied with any kind of liquor whatso-
ever.  No person owning or- having charge or con-
trol of any liquor saloon, dram shop, or tippling
house shall employ or procure, or cause to be em-
ployed or procured, any female. person to wait or in
any manner attend on any person in any dram shop,
tippling house or liquor saloon, or in any place adja-
cent thereto or connected therewith, where intoxi-
cating or malt liquors are sold or given away, nor
shall any female person be or remain in any dram
shop, tippling house, liquor saloon or place adjacent
thereto or connected therewith, and wait or attend
on any person, or solicit drinks in any such place."

This ordinance was before our court of appeals in
*Walker v. The People*, 5 Colo. App. 38, and in *City of
Denver v. Domedian*, 15 Colo. App. 36, 1st Colo. Dec.
p. 441.

In the former case, under the evidence, and in the
atter, upon t he stipulated facts, it was held that the
cases as made did not come within the prohibition.
In speaking of these regulations, however, Mr. Jus-
tice Wilson in the latter case said:

"We agree that the ordinance is a good one, that
its objects are most praiseworthy, and that its rigid
enforcement would meet with the approval of every
good citizen."

The question of its constitutionality was not there
mooted, but this expression of Judge Wilson, if only

dictum, is an indication of what his view would be had its validity been assailed. The chief object of the ordinance was there said to be to suppress the evils incident to the "frequenting of saloons by females, and the attendant results so offensive to decency and the moral sense of the public."

The power to make these particular regulations was expressly conferred by the general assembly upon the city council of the city of Denver by the 5th clause of subdivision twelve of sec. 20 of the charter, which provides:

"That no liquor saloon, dram shop or tippling house shall have or keep in connection with or as part of such saloon, tippling house or dram shop, any wine room or other place, either with or without doors, curtain or curtains, or screen of any kind, into which any female person shall be permitted to enter from the outside, or from such tippling house or dram shop, and there be supplied with any kind of liquor whatsoever."

Plaintiff does not deny that he has kept a wine room into which he permits women to enter and there be supplied with liquor and suffers them to remain therein for that purpose contrary to the specific provisions of these sections. Indeed he admits that he has violated the ordinance in both particulars, and proposes, unless prevented by the municipal authorities, to continue to do so. So that the principal question in the case is as to the constitutionality of the charter, rather than of the ordinance, for the latter confessedly is authorized by the charter. The ordinance is good if the charter provision is constitutional. Two questions are pressed by plaintiff for determination: First, was the case as made by the complaint one calling for the interposition of a court

of equity?   Second, is the charter provision constitutional?

1.   The plaintiff does not contend that he is entitled to equitable relief by injunction unless the charter is void.  Since, as appears later in the opinion, we hold it valid, it is not absolutely necessary to decide whether the admitted facts of the complaint warrant the granting of an injunction.  This court does not look with favor upon the practice of restraining municipal authorities from executing municipal ordinances which so vitally concern the tranquility of the community and good order of society. While it is true, as said in the case of *City of Denver et al. v. Beede*, 25 Colo. 172, that in exceptional cases a court of equity will restrain a prosecution at law when the legal question involved is the same at law as in equity, such is not the general rule; and a clear case should be made out before such extraordinary relief is awarded.  It is not necessary here, to indicate in what cases such relief will, and in what it will not, be given.   But it is doubtful if this complaint is so essentially different from that in the Beede case as to render inapplicable the rule there announced. We mention this point for the purpose of again emphasizing our view that only in extreme and exceptional cases should a court of equity interfere with municipal authorities in the enforcement of such ordinances.

2.   So far as the question at issue is concerned, these sections of the ordinance practically prevent a saloonkeeper from permitting women to frequent what are called wine rooms, there to be supplied with liquor; and it is only with respect to that feature of the ordinance that we are at present concerned, although it may be that the principles which govern this par-

ticular clause of the enactment equally apply to the others. As we understand the argument of his counsel, plaintiff's position is that these sections are unreasonable because they discriminate against women solely on account of their sex; that they are unconstitutional in that they deprive defendant of his property without due process of law, destroy his right to pursue a lawful calling, and deny to him the equal rights and privileges which every citizen has both under the federal and our state constitution; that they violate sec. 423 of Mills Annotated Statutes, which preserves to all the citizens of the state equal enjoyment of accommodations, advantages, facilities and privileges of inns, restaurants, churches, barber shops, public conveyances, theaters, and other places of public resort, or amusement.

With respect to the latter contention, it is sufficient merely to say that if this section, when enacted, gave to women the right equally with men to frequent saloons, and if such right depended solely upon statute, it was taken away by the general assembly, when at a later date it adopted a charter for the city of Denver, whereby authority was conferred upon the city to deprive women of the enjoyment of the so-called right.

Probably plaintiff's theory may be made still more clear by a summary of the argument of his counsel. He argues that the saloonkeeper has as much right to sell liquor to women and to allow them within his place of business, whether in the saloon proper or in a room adjacent thereto, as he has to sell to men and to permit them within such places; that a woman has as much right to buy and drink liquor as men, and if so, the keeper of a saloon has the correlative right to sell to her with as much freedom as to men; that

since women have been given the right of suffrage in this state, and in all respects stand upon a legal equality with men, they have the same right as men to the pursuit of happiness and to avail themselves of all the rational enjoyments that are open to their brothers, among which is the right to enter saloons and there buy liquor. Otherwise expressed, counsel says if a woman has a right to go into a saloon and get a drink, the same as a man, which he insists is true, the saloonkeeper has a right to sell her that drink, and any ordinance which prevents him from doing so is an invasion of his civil and property rights. If she, equally with a man, has the right to buy and the saloonkeeper may not sell to her, he is deprived of a property right without due process of law, i. e. the right to carry on a lawful business with customers entitled to patronize him.

If this ordinance was passed under cover of the incidental powers of the city, and if it also appeared to the court to be unreasonable, unfair, partial, arbitrary, or oppressive, it might be nullified. But, if it is subject to such objections only, which does not seem to us to be true, still it could not be set aside upon any of those grounds for the general assembly has expressly given to the city council authority to pass it in the form in which it is expressed, and if constitutional, it must stand.

*Phillips v. Denver*, 19 Colo. 183.

The charter provision comes clearly within the general police power, which every sovereign state, through its legislative department, possesses; and while, as counsel for plaintiff contends, under the guise or pretense of passing laws for the protection of the public morals and the general welfare and safety of the people, the legislature may not contra-

vene constitutional provisions, yet, where the legislation is a proper exercise of the police power and the courts can see that it is reasonably adapted to the permissible end in view, it may not be declared unconstitutional merely because it places some restrictions upon individuals generally, or certain classes, with respect to certain callings.

Under the license laws of this state no one may engage in the business of selling liquor without a license. He has no absolute right to sell at all. It is only a privilege he gets when a license is granted. The city of Denver, under its charter, has the exclusive power to prohibit, restrain, tax and regulate the sale of intoxicating liquors. It may exercise that power to prohibit the sale altogether; or, if it see fit, it may regulate the sale and impose such conditions as it deems necessary. Under these license laws, one may not engage in the liquor traffic as of common right, but may do so only upon compliance with prescribed regulations, and if he applies for a license under which only he may lawfully sell, he is held to take that license with whatever restrictions or limitations are imposed by the authority which, and which only, can give him the coveted privilege. One of the conditions which the charter of Denver requires to be inserted in every liquor license, is the one of which plaintiff complains. He vigorously contends that the question is not one of morality at all, but merely whether or not, in the pursuit of a lawful calling, one may be deprived of the right of selling his property to whomsoever he pleases, and whether he may permit to enter his place of business all persons, both female and male, who wish to buy.

It is to be observed that no woman is here to as-

sert her constitutional right to frequent wine rooms or to buy liquor, and it is also pertinent to remark that these particular sections do not prohibit women from going into saloons or from buying liquor. They are the only sections of the ordinance before us and neither contains a penalty for a violation thereof by women. Counsel says that sec. 751, which is not found in the record, provides a penalty to be visited upon females who remain in the places, or do the acts against which the prohibitions are aimed. However that may be, and it is not material to the decision of the case in hand, we are not reviewing a judgment pronounced against a woman for violating any provision of these sections. The argument of counsel therefore, in behalf of females, against whom the alleged unwarranted discrimination is made, would come with better grace were one of them here complaining. Yet, as plaintiff in part bases his claim that he is deprived of his property and civil rights and denied the privileges of a citizen of the United States, upon the alleged fact that he is not allowed to sell liquor to a class that have the inalienable right to buy, we have considered the point.

If a discrimination is made against women solely on account of their sex, it would not be good; but, if it is because of the immorality that would be likely to result if the regulation was not made, the regulation would be sustained. That injury to public morality would ensue if women were permitted without restrictions to frequent wine rooms, there to be supplied with liquor, is so apparent to the average person, that argument to establish so plain a proposition is unnecessary. But, if some people might not be willing to concede this, it is enough to say that the general assembly, speaking through the city council,

with whom the decision entirely rests, has so determined. Women therefore may properly be excluded from wine rooms as this ordinance provides, and if they have no constitutional right to insist upon being admitted to places there to be supplied with liquor, when the effect would be demoralizing to society, *a fortiori*, the saloonkeeper may be prevented from furnishing them facilities for contributing to that result.

Again we say, the selling of liquor is not a lawful calling in the city of Denver, unless a license is secured for it, and it becomes such only when conducted as the license specifies. Plaintiff's whole argument proceeds upon false premises, and his conclusion is necessarily wrong. The right to sell liquor is not an inherent right of a citizen of the United States. The traffic in it is unlawful without a license, and it may be prohibited in Denver. It necessarily follows that all regulations for its sale and the privilege of selling when granted are solely within the lawful discretion of the city council under the existing charter of the city. This ordinance does not operate as a discrimination between different licenses. It applies equally to every one of that class, and the fact that it restricts the classes or persons to whom sales may be made in certain places or localities does not make it invalid. All courts can readily see that the restrictions therein found and the classification made with respect to the persons permitted to frequent wine rooms for supplying themselves there with liquor, are based upon reasons that have their seat in the facts of nature, and that such regulations are conducive to, and are reasonably adapted to secure, the worthy object of preserving public morality. We might well stop here, but, to show how

32

other courts view such contentions as plaintiff makes, we refer to some leading decisions.

The supreme court of the United States in the case of *Crowley v. Christensen*, 137 U. S. 86, has thus effectually disposed of plaintiff's argument:

"The sale of such liquors in this way (by retail) has therefore been, at all times, by the courts of every state, considered as the proper subject of legislative regulation. Not only may a license be exacted from the keeper of the saloon before a glass of his liquors can thus be disposed of, but restrictions may be imposed as to the class of persons to whom they may be sold, and the hours of the day and the days of the week on which the saloons may be opened. Their sale in that form may be absolutely prohibited. It is a question of public expediency and public morality, and not of federal law. The police power of the state is fully competent to regulate the business—to mitigate its evils or to suppress it entirely. There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the state or of a citizen of the United States."

The supreme court of Indiana in the case of *Blair and others against Kilpatrick*, 40 Ind. 312, and in *Welsh v. The State*, 126 Ind. 71, has held that a law providing for the granting of license to retail intoxicating liquors, which requires that the vendor shall be a male inhabitant of the state, is not in conflict with the United States constitution, which provides that the citizens of each state shall be entitled to all the privileges and immunities of the citizens of the several states. The supreme court of Ohio in *Bergman v. Cleveland*, 39 Ohio St. 651, decided that an ordinance which makes it an offense for the proprietor

of a liquor saloon to employ females to serve his customers with such liquor, is valid, and does not contravene any provision of the state or federal constitution. In *Lodano v. State*, 25 Ala. 64, it was held that the legislature is not restricted by the constitution from imposing such conditions as it may deem proper in licensing the sale of liquor, or such as in their opinion the good of the community may require, both as regards the persons to whom saloonkeepers may sell and the quantities in which liquor may be sold. The court of appeals of Missouri in 35 Missouri Appeals, p. 532, upheld a law and ordinance which forbade the sale of intoxicating liquor to any student of the state university, or any school, college, or academy in the state.

The laws of many states prohibit the sale of intoxicating liquors to Indians, minors, habitual drunkards, and other classes of people, and, in many of the southern states, before the civil war, sales to slaves and free negroes were forbidden. The holding in all the states has been uniform that such regulations when deemed by the legislature necessary or proper in the interests of good morals, may not be interfered with by the courts.

We conclude this brief review by referring to the authorities which are collated in the 17 American and English Enc. of Law, second editition, p. 210, *et seq.*; to *Mugler v. Kansas*, 123 U. S., 623; the *License Cases*, 5 How. 504 (16 Curtis 513); and *Exparte Christensen*, 85 Cal. 208, where many cases are cited, and exhaustive opinions of learned judges may be examined.

In *In re Mary Maguire*, 57 Cal. 604, it was held that a regulation which prohibited women from being employed in saloons to serve drinks, the same as men,

was in conflict with that clause of the California constitution which expressly declared that no person shall, on account of sex, be disqualified from entering upon or pursuing any lawful business, vocation or profession. It would seem that plaintiff, as well as the district court, relied strongly on this decision. We have no such constitutional provision. But if we had, we do not think it would be contravened by the ordinance in question; certainly not by the clause limiting the classes to whom sales may be made. Whatever weight this case had as an authority is weakened, if not destroyed, by the subsequent cases in the same court of *Ex parte Hayes*, 98 Cal. 555, and *Foster v. Police Commissioners*, 102 Cal. 483, which overruled it and declared such regulations to be entirely proper and valid. In line with the later decisions in California is *State v. Reynolds*, 14 Mont. 383.

A case quite in point is that of *Schwuchow v. City of Chicago*, 68 Ill. 444, and as the principles which govern this case are so well expressed there, we take the liberty of quoting from the opinion. The court speaking by Mr. Justice Walker, said:

"The legislature, then, having conferred such power, it was for the common council to determine whether they would wholly suppress the sale of intoxicating liquors, or grant the privilege on such terms and conditions as they might choose. And the power was ample, under this grant, to impose as a condition, that when a license is granted it should be liable to revocation on the violation of the ordinances regulating the traffic, or, having absolute control over the whole subject of granting licenses, they may impose any other condition calculated to protect the community, preserve order and to suppress vice.

These restraints are not like such as restrict the ordinary avocations of life, which advance human happiness, or trade and commerce—that neither produce immorality, suffering nor want. This business is, on principle, within the police power of the state, and restrictions which may rightfully be imposed upon it might be obnoxious as an illegal restraint of trade when applied to other pursuits. The city, then, had a right to make it a condition that appellant's grocery should be closed on election days, on thanksgiving days, fast days, holidays, Sundays or other days, or might have imposed as a condition that appellant should close his grocery at a particular hour on each evening; and for a violation of any of these conditions, have provided for a forfeiture of his license. They had the power to insert, as they have done, each and all of the prohibitions contained in his license; and the power grows out of the fact that it was discretionary to prohibit such sale of liquors, or license it on such terms as they might choose."

And as to the point that appellant in that case had accepted a license from the city which contained certain restrictions which he sought to repudiate, the court uses this language:

"But above all, appellant, by accepting and acting under this license, consented that the mayor might in his discretion, revoke it, and, having agreed to it he now has no right to insist that it shall be adjudged forfeited by a judicial tribunal—by some process which does not occur to us as applicable to that end."

In the supreme court of Kentucky in *Gastineau v. Commonwealth of Kentucky*, a recent case reported in 49 Lawyers' Reports, Annotated, p. 111, a municipal ordinance was declared void which made it a misdemeanor for a woman to go into any building where

liquor is sold or stand within 50 feet of such building. That is essentially different from the case at bar. Indeed the reasoning of the court in its brief opinion, clearly shows that an ordinance like that before us would be sustained. In a note to the case, the learned annotator has discussed the constitionality of municipal ordinances which were alleged to discriminate against women. From his collection of authorities it would seem that if the restriction of an occupation was, as we have heretofore suggested, merely on account of sex, it might not be upheld; but, if it was on account of the immorality that would result if the restriction was not made, the regulation would be valid.

That the regulations attacked here are a legitimate exercise of the police power of the state we have no doubt; that their object is to protect the morals of the community, to secure good order, and advance the general welfare cannot be gainsaid; that the right to sell liquor is not an inherent right of a citizen of the United States is beyond cavil; that plaintiff has not been deprived of any property or civil right without due process of law, or denied any privilege belonging to a citizen of the United States, is equally clear. As so aptly expressed by the supreme court of Illinois in the Schwuchow case, *supra*, restraints and limitations upon the liquor traffic may be upheld, which might not be sustained as to callings that may be pursued as of common right. We are clearly of opinion that the regulations here complained of are not inhibited by any provision of the federal or state constitution.

The judgment is therefore reversed and a judgment entered here dismissing the action.

*Reversed and action dismissed.*